FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL -7  PH 2: 30

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BERNARD MERRICKS**                                   **CIVIL ACTION**

**VERSUS**                                                       **NO. 04-1180**

**JO ANNE BARNHART**                                 **SECTION "B" (3)**
**COMMISSIONER OF SOCIAL SECURITY**

## REPORT AND RECOMMENDATION

Pro Se Plaintiff, Bernard Merricks, seeks judicial review pursuant to 405(g) of the Social Security Act (the "Act") of the final decision of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for supplemental security income benefits ("SSI"), under Title XVI of the Act. 42 U.S.C. § 405(g) *et seq.* This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B). Plaintiff's appeal was submitted on memoranda and the Administrative Record of the proceedings before the Commissioner. The general issue raised to the Commissioner is whether the claimant was disabled under Section 1614(a)(3)(A) of the Social Security Act.

Considering the memoranda, administrative record, and the applicable law, for the reasons set forth in the captioned report below, the undersigned United States Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED ON APPEAL and the

1

___ Fee _____
___ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No. _____

plaintiff's complaint be DISMISSED WITH PREJUDICE.

## I. PROCEDURAL BACKGROUND

On April 17, 2001, the plaintiff/claimant, Bernard Merricks ("Merricks"), filed an application for disability insurance benefits, claiming an inability to work since November 15, 2000 due to arthritis in both shoulders, diabetes, glaucoma and post-traumatic stress disorder (PTSD).[1]   At the time of his application, plaintiff reported that he worked part-time for the City of New Orleans as a Recreation Supervisor.[2]

Following the determination of non-disability, a hearing was scheduled before ALJ Elving Torres on June 19, 2002.[3]  Pursuant to the first hearing, the ALJ determined that Merricks has some residual limitations from prior surgery on both shoulders that have more than minimal impact on his ability to perform work-related activity and thus a "severe" impairment or combination of impairments; however, the plaintiff's PTSD, diabetes and glaucoma are not "severe."  The ALJ further concluded that Merricks was capable of performing his past relevant work as a hotel air-conditioning service technician and is not "disabled," as defined by the Social Security Act.[4]  On review, the Appeals Council vacated the aforesaid hearing decision and remanded the case, finding that the decision did not satisfy the regulations insofar as the ALJ concluded that the plaintiff's mental impairment was not "severe" and further noting that the ALJ

---

[1]*See* Leads Protective Filing Worksheet [Adm. Rec. 206]; Application for Disability Insurance Benefits dated April 24, 2001 [Adm. Rec. 207-209]; Adult Disability Report dated April 24, 2001 [Adm. Rec. 214].

[2]*See* Application for Disability Insurance Benefits dated April 24, 2001 [Adm. Rec. 209].

[3]*See* Transcript of Administrative Hearing dated June 19, 2002 [Adm. Rec. 27-59].

[4]*See* ALJ Elving Torres' Decision dated September 16, 2002 [Adm. Rec. 104].

failed to adequately evaluate Merrick's alleged mental impairment in accordance with the provisions of 20 C.F.R. § 404.1520a.[5]   On July 2, 2003, a second Notice of Hearing issued advising the plaintiff of the second administrative hearing scheduled for August 6, 2003, further advising that a vocational expert would testify and requesting that any additional evidence be submitted either prior to or at the August 6, 2003 hearing.[6]   Pursuant to the August 6, 2003 hearing,[7] ALJ Torres issued his decision on remand, again concluding that the plaintiff does not have a "severe" mental  impairment within the meaning of the Social Security Act and the relevant case law and that, notwithstanding the combination of plaintiff's other "severe" impairments, including non-insulin dependent diabetes mellitus, glaucoma and status-post bilateral shoulder surgery, plaintiff is not "disabled" within the meaning of the Social Security Act.[8]

The Social Security Appeals Council denied plaintiff's request for review of the determination on remand, concluding that there was no basis in the regulations for granting the request and noting that the contentions raised provided no basis for changing the ALJ's October 27, 2003 determination.[9]   In denying claimant's request, the Appeals Council considered evidence

---

[5]*See* Order of Appeals Council Remanding Case to Administrative Law Judge dated February 3, 2003 [Adm. Rec. 108-110].

[6]*See* Notice of Hearing issued July 2, 2003 [Adm. Rec. 111-119].

[7]*See* Transcript of August 3, 2003 Administrative Hearing [Adm. Rec. 60-94].

[8]*See* ALJ Elving Torres' Decision dated October 27, 2003 [Adm. Rec. 13-22].

[9]*See* Notice of Appeals Council Action dated February 27, 2004 [Adm. Rec. 5-8].

in addition to that which was before the ALJ.[10]

The decision became final when the Appeals Council denied review and is now ripe for

judicial review.  On April 26, 2004, the Merricks filed his complaint in the captioned matter

pursuant to 42 U.S.C. § 405(g).  The parties agree that the issues are amenable to summary

disposition.[11]

## II. ALJ's FINDINGS

The ALJ found that the plaintiff has a combination of impairments (non-insulin

dependent diabetes mellitus, glaucoma and status-post bilateral shoulder surgery, 1988-1989)

which impose more than minimal limitations on his ability to perform regular work-related

activities and can be considered as "severe" within the meaning of *Stone v. Heckler,* 752 F.2d

1099 (5th Cir. 1985) and Social Security Regulation 96-3P.  ALJ Torres further determined that

the plaintiff's subjective signs and symptoms of psychiatric impairment are not appropriately

documented and cannot be credited; thus he does not have a "severe" mental impairment within

the meaning of the Act.[12]  The ALJ explained his finding regarding Merrick's lack of any

significant mental impairment or limitations as follows:

> Claimant attributed considerable importance to what he characterized as
> depression and PTSD; however, VA is not prescribing any psychoactive

---

[10]*See* Memorandum from Claimant's Representative dated December 22, 2003 (arguing that the ALJ failed to properly evaluate the plaintiff's mental impairment, violated the Appeals' Council's order in concluding that the plaintiff's mental impairment was not "severe," and erred in determining that he could return to his past relevant work)  [Adm. Rec. 353-355/ Exhibit AC-1].

[11]*See* Claimant's Brief in Support of the Plaintiff's Appeal and Statement of Uncontested Material Facts [Fed. Rec. No. 6]; and Commissioner's Reply Memorandum of Facts and Law [Fed. Rec. No. 8].

[12]*See* ALJ Torres' Decision [Adm. Rec. 21].

medication for him and he has never been enrolled in any specially designed, intensive PTSD programs. Obviously, no objective signs have been demonstrated that would prompt VA providers to pursue such treatment. The records show that claimant has intermittent contact with a "readjustment counselor" with whom he discusses various stressors and problems, but he has never undergone psychiatric evaluation or been hospitalized for mental impairment.

It is noted that the subjective complaints of intrusive and distressing recollections, nightmares and flashbacks were first reported during a visit that occurred nine days after the Order of Remand was issued in this case. (Exhs. 6B and 11F/2). Careful review of all records from earlier counseling sessions shows that those specific symptoms were never before reported. There is no significant treatment history for mental impairments, no prescribed medication to manage symptoms and no supporting medical opinions or documentation that validates claimant's subjective complaints. There is no specific psychiatric diagnosis indicated by a physician, psychiatrist or duly qualified psychologist. Despite the complaints he alleged in February 2003, an intake screening from August 2002 was negative for depression and indicated that the claimant was receiving no treatment for depression. (Exh. 7F/11).

Claimant's activities of daily living are not restricted in any appreciable degree. In 2001, he reported daily activities that include walking, doing some handyman work, "hanging" on the corner with "the guys," cooking and cleaning. Additionally, claimant worked with children as a recreation instruct[or] for four hours a day until at least November 2001. Said activities cannot be considered limited and additionally show that claimant's social functioning is not significantly compromised. Although he occasionally alleged increasing degrees of isolation and social difficulties during counseling sessions, it is clear from his activities that he is able to interact with others including friends, children in the community, family and his girlfriend.

There is no basis for a conclusion that concentration, persistence or pace are significantly limited. Notes from counseling sessions do not reflect any degree of confusion or inattention. Dr. Wickett's mental status examination included findings consistent with normal thought processes and average intelligence. (Exh. 3F). [Claimant's] subjective statements during questioning at the hearing by his representative as to "lack of concentration" due to PTSD and depression lack documentary support and cannot be credited.

Episodes of deterioration or decompensation are not demonstrated in the

evidence.  To the contrary, the fact that claimant sustained part-time work activity for at least a year after the alleged onset date and functions with no or no more than a slight degree of compromise in all other relevant areas persuasively shows that he maintains good adaptive and overall functioning.  Certainly, the lack of any significant treatment for a mental impairment is consistent with a finding that there have not been consistent or repeated episodes of symptom exacerbation.

The **documented** manifestation of a disorder in terms of symptomatology, the severity of such symptomatology and any resulting functional limitations constitute the basis for analysis of whether an alleged impairment is "severe." Such documentation is not present in this case.  It has not been satisfactorily established that claimant's alleged depressive symptoms and/or PTSD symptoms necessitated regular treatment.  His overall condition is stable and there is no appropriate evidence of more than minimal functional limitation resulting from a mental impairment.  For the multiple reasons discussed above, I conclude that claimant does not have a mental impairment that can be considered as "severe" within the meaning of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p.[13]

The ALJ concurred in large part with conclusions set forth by the state medical consultants, Drs. Guidry and Higgins, who concluded that Merricks could perform medium work and did not have a "severe" mental impairment.[14]  The ALJ specifically noted that the more restrictive findings of the state medical consultant, Dr. McFarlain, were not persuasive.  ALJ Torres explained that Dr. McFarlain's assessment indicating moderate degrees of limitation in two functional areas is inconsistent with the absence of formal psychiatric or psychological treatment, the minor amount and type of counseling received by the plaintiff, as well as his daily activities demonstrated by the record.[15]

---

[13]ALJ Torres' Decision dated October 27, 2003 (emphasis in original) [Adm. Rec. 18-19].

[14]*Id.* (citing Exhs. 4F and 5F) [Adm. Rec. 20].

[15]*Id.* [Adm. Rec. 21].

6

Regarding his diabetic condition, the ALJ noted that oral medications control claimant's diabetes and he has never required insulin therapy or hospitalization for hyperglycemia. Additionally, ALJ Torres explained that it is well-documented that Merricks' difficulty with sustained blood glucose control is attributable to his persistent non-compliance with medication and diet restrictions; therefore, he cannot be considered disabled by any such severe functional limitations caused by plaintiff's failure to follow the prescribed course of treatment. The ALJ further noted the absence of significant "end-organ" damage, no problems with gait or other functional loss, no abnormal neurological findings and no clinical/diagnostic findings indicating the presence of diabetic neuropathy or retinopathy.[16]

Addressing plaintiff's status post bilateral shoulder surgery in 1988 and 1989, the ALJ observed that a longitudinal view of the record indicates that the plaintiff performed at both the medium and heavy exertional levels for years following his surgery. The VA medical records further indicate no complaints of shoulder discomfort until November of 2002, at which time plaintiff received only conservative treatment and his symptoms were improved with non-steroidal anti-inflammatory medications. The medical records further reflect that the plaintiff experienced good, if not full, range of motion in both arms with normal strength and neurological function in all muscle groups.[17]

The ALJ concluded that, notwithstanding the fact that the plaintiff may experience some degree of functional loss as a result of his medically determined combination of impairments,

---

[16]ALJ Torres' Decision dated October 27, 2003 [Adm. Rec. 19].

[17]*Id.* [Adm. Rec. 19-20].

7

such limited loss of function is not compatible with the performance of certain levels of sustained work activity.  Most notably, neither the objective medical evidence nor claimant's testimony established severe impairments that preclude all work-related activities.  ALJ Torres determined that the plaintiff retains the residual functional capacity (RFC) to perform medium work that does not involve pushing/pulling greater than 25 pounds frequently, 50 pounds occasionally or frequent overhead work.  Based upon the aforesaid RFC, the ALJ concluded that Merricks was able to return to his past relevant work as a recreation instructor and assembly-line mechanic and that he has not been under a "disability" at any relevant time through the date of the decision.[18]

### III. STATEMENT OF ISSUES ON APPEAL

Merricks' request for judicial review argues that the Commissioner's decision is not based upon "substantial evidence" and contravenes Social Security Regulations.  Specifically, the challenges are that the ALJ "turned a blind eye to the evidence," failing to consider the VA Medical Center Records stating that he had joint disease in both shoulders, Sears and Robuck Employment Center Records noting that plaintiff was awarded a 10% workers' compensation disability and records indicating that he is partially blind today.[19]  Plaintiff further submits that he has history of PTSD and experiences depression, loneliness and anger.[20]  Plaintiff has submitted extra-record evidence for this Court's review  which was not submitted to either the ALJ or the Appeals Council, to wit: (1) post-decision 2004 medical treatment records;  (2)  Correspondence

---

[18]ALJ Torres' Determination dated October 27, 2003 [Adm. Rec. 22].

[19]*See* Plaintiff's Memorandum in Support of Summary Judgement at unnumbered pages 9-10.

[20]*Id.* at p. 10.

from Sears dated 1984 setting out worker's compensation payments owed to plaintiff in the 1980's; and (3) VA records issued during the pertinent time period (*i.e.*, 2001) indicating that the plaintiff underwent a mental status examination and that the VA gave him a 20% disability rating for his diabetes. Additionally, plaintiff complains of some unexplained procedural irregularity in the appointment of administrative appeals judges, who reviewed his application and issued the Appeals Council's decision in his case. The plaintiff further complains that the ALJ failed to comply with the Appeals Council's order on remand.

The Commissioner submits that, because there is substantial evidence in the record which supports the final decision, it should be affirmed. More particularly, the Commissioner argues that the record viewed as a whole indicates that the claimant was in fact capable of performing a wide range of medium level work activity despite his combination of impairments. Defendant further explains that plaintiff's additional impairment of glaucoma did not impose any work-related restriction during the time period covered by the ALJ's decision. The Commissioner submits that the Court should not consider the plaintiff's extra-record evidence. In this regard, the defendant points out that the plaintiff has failed to show the requisite "good cause" for his failure to submit certain medical records to the ALJ or the Appeals Council. As to the 2004 medical records, the Commissioner contends that this evidence is immaterial to the ALJ's decision, which refers to the time period pre-dating October 12, 2003. Finally, the Commissioner submits that the Administrative Appeals Judges (AAJs) who issued the Appeals Council's actions in this case are, in fact, members of the Appeals Council and that nothing in the regulations prevents the Appeals Council from designating its members as AAJs.

9

## IV. APPLICABLE LAW

### A. STANDARDS OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.[21] If the Commissioner's findings are supported by substantial evidence they must be affirmed.[22]

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.[23] It is more than a scintilla, but may be less than a preponderance.[24]

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner.[25] The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[26] However, the district court must scrutinize the record in its entirety to determine

---

[21]*See* 42 U.S.C. § 405(g); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995); *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993); *Carriere v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).

[22]*Martinez,* 64 F.3d at 173.

[23]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Spellman,* 1 F.3d at 360.

[24]*Id.*

[25]*Ripley,* 67 F.3d at 555; *Spellman,* 1 F.3d at 360; *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).

[26]*See Arkansas v. Oklahoma,* 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

the reasonableness of the decision reached and whether substantial evidence exists to support it.[27] Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive.[28]

## B. ENTITLEMENT TO DISABILITY BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, the plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[29] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[30] The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[31]

The five-step procedure for making a disability determination under the Social Security Act was cogently restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a

---

[27]*Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

[28]*Ripley*, 67 F.3d at 555.

[29]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[30]20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

[31]*Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990).

five-step analysis is employed.  First, the claimant must not be presently working at any  substantial gainful activity. Second.  the claimant must have an impairment or combination of impairments that are severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[32]

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts;(2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.[33]   "The Commissioner, rather than the courts, must resolve conflicts in the evidence."[34]

## C. MEDICAL OPINIONS OF A TREATING SOURCE

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source."  These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other

---

[32]*Shave*, 238 F.3d at 594 (*quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

[33]*Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995).

[34]*Id.*

12

substantial evidence.  Even if the ALJ finds that the treating source's medical opinion is not entitled

to controlling weight, that does not mean that the opinion can be rejected.  "Treating source

medical opinions are still entitled to deference and must be weighed using all of the factors

provided in 20 C.F.R. §§ 404.1527 and 416.927."  (SSR 92-2p)

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining

relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and

extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.[35]  Suffice it to

say, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to

other experts where the treating physician's evidence is conclusory, is unsupported by medically

acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the

evidence."[36]

Even though the opinion and diagnosis of a treating physician should be afforded

considerable weight in determining disability, "the ALJ has sole responsibility for determining a

claimant's disability status."[37]  No special significance is accorded to the source of an opinion on

issues reserved to the Commissioner, such as whether impairments meet or equal the requirements

for impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing

---

[35]Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990). However, specialization is only one of several factors considered in the evaluation of medical opinions.

[36]*Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001)(finding that the ALJ's limited rejection of opinions and medical records provided by treating physician justified by the character of records provided and supported by medical evidence from other treating an reviewing physicians); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

[37]*Moore v. Sullivan,* 919 F.2d at 905.

of Impairments.  Where there is conflicting evidence regarding an issue reserved for the

Commissioner, he has the responsibility to resolve that conflict.  The final decision on whether a

claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that

determination may be made only by the Commissioner.[38]

In summary, the Commissioner has considerable discretion in assigning weight to medical

opinions and is free to reject the opinion of *any* physician when the evidence supports a contrary

conclusion.[39]

## V. EVIDENCE

### A. MEDICAL EVIDENCE

Having reviewed the medical records in their entirety, this Court finds that the ALJ's

summary is substantially correct.  ALJ Torres provides a thorough discussion of all of the relevant

medical findings, not just selective notes of the portions of medical records which support his

conclusions.[40]   Below the Court reiterates the highlights.

VA Medical Center Records dated July 22, 1999 note that Merricks was then a newly

diagnosed diabetic referred to the facility for diabetic education.[41]  Progress notes dated August 25,

1999 indicated that plaintiff's diabetes was "stable and improving," hyperlipidemia was stable and

---

[38]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989); *Moore,* 919 F.2d at 905.

[39]*See Greenspan*, 38 F.3d at 237(holding that the Act empowers the Commissioner to analyze the physicians' testimony and when substantial evidence supports the ALJ's decision to disregard a physician's conclusions, that basis alone is enough to survive judicial review); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

[40]*See* ALJ Torres' Decision [Adm. Rec. 14-16].

[41]*See* VAMC Records dated July 22, 1999 [Adm. Rec. 291].

the tinea (fungal infection) of his feet was resolved.[42]   Plaintiff was instructed to continue all

medications as ordered and to return in two months.[43]   On October 29, 1999, Merricks returned to

the clinic for a routine follow up, voiced no complaints and stated that he started the prior month

building and inspecting compressors for refrigerators.  His condition remained stable and Merricks

was advised to continue his medications, diabetic diet and exercise program.[44]   Plaintiff continued

with monthly routine follow-up visits to the VA, his diabetic condition remained stable and he

voiced no complaints.  His pulses in the feet were 2+, sensation was intact and there were no

lesions or maceration.[45]

Opthamology Clinic notes dated February 28, 2000 noted a decline in vision due to the fact

that the plaintiff had not been using eye drops regularly.  Progress notes further indicate that the

importance of treatment was discussed with Merricks and, in light of the discussion, he resolved to

comply with the prescribed eyedrop regimen at bedtime.[46]  Opthamology Clinic progress notes

dated June 6, 2000 note plaintiff's admission that he forgets to take his medication.  Again,

compliance with the eyedrop regimen was stressed to the plaintiff.[47]  Notwithstanding the

instructions from medical health professionals, Opthamology Clinic progress notes dated

---

[42]*Id.* [Adm. Rec. 288].

[43]*Id.*

[44]VAMC Progress Notes dated October 27, 1999 [Adm. Rec. 286].

[45]VAMC Progress Notes dated November 29, 1999 [Adm. Rec. 284]; VAMC Progress Notes dated February 28, 2000 [Adm. Rec. 282]; VAMC Progress Notes dated May 10, 2000 [Adm. Rec. 278].

[46]VAMC Progress Notes dated February 28, 2000 [Adm. Rec. 281].

[47]VAMC Progress Notes dated June 6, 2000 [Adm. Rec. 276].

November 22, 2000 attribute the lack of improvement in Merricks' intraocular pressure to his poor compliance with his prescription drug therapy.[48]

VA Medical Center progress notes dated September 12, 2000 indicate that the plaintiff voiced his desire to reduce his medications and that there was a compromise adjustment to his prescription medications. Per Merricks' wishes, Metformin and ACEI for proteinuria was reduced and Glyburide was completely stopped.[49] Clinic notes further indicate that plaintiff's diabetes was in "good control."[50]

On January 16, 2001, Merricks presented himself to the VA Medical Center for "Urgent Care." He was ambulatory and stated that he quit taking his Metformin altogether in November. He gave a history of weight loss, frequent urination and loss of teeth.[51] The determination was made to restart Glyburide and continue the Metformin and all other medications. The records further reflect that Merricks refused counseling with a dietician .[52]

Follow up Diabetes Clinic Progress Notes dated January 31, 2001 indicate that Merricks had been non-compliant with his medications, diabetic diet and exercise regimen. Plaintiff was experiencing hyperglycemia because of his non-compliance. He was instructed regarding the proper diabetic diet and offered consultation with a dietician. Again, Merricks refused the

---

[48]VAMC Progress Notes dated November 22, 2000 [Adm. Rec. 270, 272].

[49]VAMC Progress Notes dated September 12, 2000 and November 28, 2000 [Adm. Rec. 269, 273, 274].

[50]VAMC Progress Notes dated September 12, 2000 [Adm. Rec. 274].

[51]VAMC Urgent Care Notes dated January 16, 2001 [Adm. Rec. 266, 267].

[52]*Id.* [Adm. Rec. 263].

16

consultation, stating that "he knows what to do, he just needs to do it."[53]  Merricks was instructed

on the symptoms of hyper/hypoglycemia and warned that continued levels as high as his "are

deadly."[54]  Progress notes clearly indicate that Merricks had a "good understanding of all

instruction" and "his responsibility to comply."[55]

On February 12, 2001, plaintiff returned to the VA Medical Center for a CBG (complete

blood glucose) check and his levels were high despite the fact that his dosage of Glyburide was

increased.  Progress notes reflect that plaintiff's failure to comply with diet restrictions was the

culprit (*i.e.*, Rally's burger/milkshake, Shoney's strawberry shortcake/whipped cream, *inter alia*).

Progress notes further reflect the following opinion, to wit:

> Patient is totally non-compliant and knows it.  I instructed him that no matter what I
> do, if he continues to eat this way he will probably have a diabetic coma.  He has
> been able to control this in the past, therefore he knows what to do.  Again, we
> discussed diet, exercise and medications.  Patient again states that he will be
> compliant with diet and exercise and again refuses the dietician.[56]

Plaintiff was diagnosed with Hyperglycemia caused by his non-compliance.  He was given insulin

and a repeat CBG was ordered within thirty (30) minutes.  Additionally, Merricks was instructed to

return in two (2) days for a repeat CBG.[57]

---

[53]VAMC Progress Notes dated January 31, 2001 [Adm. Rec. 263].

[54]*Id.*

[55]*Id.*

[56]VA Medical Center Progress Notes dated February 12, 2001 [Adm. Rec. 262].

[57]*Id.*

17

As instructed, Merricks returned in two days and "a big improvement" was noted.  Plaintiff reported to the doctor that he had been compliant with his diabetic diet and exercise program.[58]

Notes of the readjustment counselor dated January 22, 2001 indicate that Merricks stated that he was feeling "a little depressed."  After his session, however, the plaintiff felt better.[59]  The readjustment counselor's March 5, 2001 notes reflect that Merricks took a leave of absence from his job, but that he was working with children at a NORD playground.  Plaintiff reported that he works only working about 20 hours a week because of his nerves.[60]

On July 6, 2001 plaintiff was examined by an internist, Dr. Miljana Mandich, at the request of the Social Security Administration.  At that time plaintiff's major complaints were diabetes, glaucoma, kidney problems and shoulder pain.[61]  Plaintiff's medications included Glyburide, Fosinopril and two different kinds of eye drops for Glaucoma.  Merricks had recently undergone oral surgery and was given Tylenol #3 and Oxycodone to take as needed since the oral surgery.  Merricks denied experiencing any syncope, paralysis, involuntary movements and disorders of coordination, exhibited no speech or memory problem and reported no psychiatric illnesses.  Plaintiff's visual acuity with glasses was 20/70 and 20/50.  Examination of the plaintiff's neck, chest, spine and back were completely normal.  Plaintiff complained of some shoulder pain; however, aside from the surgical scar, both shoulders were normal in configuration and appearance.  Additionally, there was normal range of motion except for *mildly limited* abduction

---

[58]VA Medical Center Progress Notes dated February 15, 2002 [Adm. Rec. 261].

[59]VA Medical Center Progress Notes dated January 22, 2001 [Adm. Rec.  264].

[60]VA Medical Center Progress Notes dated March 5, 2005 [Adm. Rec. 259].

[61]*See* Report of Dr. Miljana Mandich  dated July 13, 2001 [Adm. Rec. 292].

bilaterally.[62]  Regarding the plaintiff's neurological and mental status, Dr. Mandich observed:

> Neurological:  Normal including normal symmetrical muscle, bulk, tone and
> strength in all muscle groups including proximal and distal muscles of upper
> extremities and grip strength bilaterally.  He has 1+ symmetrical deep tendon
> reflexes and normal gait.

> Mental Status:  The patient is oriented in four spheres and appears to be of average
> intelligence.  The patient displays adequate cooperation with the examination as
> well as appropriate mood and behavior.  Memory and insight are intact.  Personality
> estimate is normal except the patient seemed somewhat subdued.[63]

Dr. Mandich further noted that (1)  VA Medical Center notes from February, 2000 mention that the

patient has a history of depression and is followed by Psychiatry; and (2) plaintiff's statement that

he has gone to the clinic for post-traumatic stress disorder.   Dr. Mandich also stated that the

plaintiff denied being on any psychoactive or anti-depressant medications.

Dr. Mandich diagnosed the following conditions, to wit: shoulder pain with heavy lifting,

non-insulin dependent diabetes for nine years, glaucoma controlled with topical medications and

proteinuria under treatment with Fosinopril.[64]  Notwithstanding some recurrent soreness with

heavy lifting, plaintiff reported working for the city doing "odd jobs" about 20 hours per week.[65]

On July 25, 2001, Dr. Martha D. Wickett performed a psychiatric evaluation of the

plaintiff.  When asked about PTSD, Merricks stated that he did not know that he had it.  Dr.

Wickett observed:

---

[62]*Id.* [Adm. Rec. 293-295].

[63]Dr. Mandich's Report dated July 13, 2001 [Adm. Rec. 295]; *see also* VA Center Medical
Center Progress Notes date July 16, 2001 [Adm. Rec. 338-339].

[64]*See* Dr. Mandich's Report [Adm. Rec. 296].

[65]*Id.*

19

Mr. Merricks is a pleasant, neatly groomed man who was well spoken and had good eye contact. He was oriented in all spheres and to the exact date. He knew the President, Vice President, Mayor and Governor. He drove himself to the session. He could recall three objects at once and two after five minutes. He could do one and two digit addition problems, serial sevens, and multiply 3x4. His IQ was within normal limits. His thought processes showed no looseness of association or flight of ideas. He moved OK with no abnormal movement. His affect was appropriate to his slightly anxious mood.   He said an apple and an orange grow on trees. He abstracted simple proverbs. He would mail a letter he saw lying down on the ground.
IMPRESSION: Mr. Merricks has medical problems which are better evaluated by another specialist. He has a history of Post Traumatic Stress Disorder and is receiving treatment for that. He is competent to manage his own affairs. His prognosis is somewhat guarded due to the longevity and severity of his illness and due to the added stress of his present medical problems.[66]

As the ALJ observed, between January 22, 2001 and February 12, 2003, Merricks met with

a readjustment counselor at the VA Medical Center PTSD Outpatient Clinic on eleven occasions.

During these visits plaintiff reported various subjective complaints, including feeling depressed,

inability to cope, problems with stress, girlfriend problems, difficulty interacting, trouble sleeping

and feeling overwhelmed by life's problems.[67]   VA Medical Center Progress Notes dated August

9, 2002 state that Merricks "is not being treated for depression" that his "depression screen is

negative."[68]  Only after his case was remanded by the Appeals Council did the plaintiff report

experiencing the symptoms of distressing recollections, nightmares and flashbacks.[69]

---

[66]*See* Psychiatric Evaluation by Dr. Martha D. Wickett dated July 25, 2001 [Adm. Rec. 299-302].

[67]See Readjustment Counselor's Progress Notes dated March 5, 2001, July 2, 2001 August 20, 2001 November 6, 2001, September 18, 2001, June 6, 2002 , October 18, 2002 [Adm. Rec. 138, 148, 259, 330, 333, 335, 344 ].

[68]VA Medical Center Progress Notes dated August 9, 2002 [Adm. Rec. 143].

[69]*See* VA Readjustment Counselor's Notes dated February 12, 2003 [Adm. Rec. 182].

VA Medical Center Progress Notes dated November 8, 2002 state that Merricks complained of chronic pain in his shoulders for two weeks and that he requested a steroid injection, which had helped him in the past.  The plaintiff noted that the pain was *not* severe and he denied experiencing any shortness of breath, midsternal pain or pain on exertion.  Physical examination revealed that Merricks had both *good and full range of motion* in his arms bilaterally, with no crepitus or pain on manipulation or palpation.  The plaintiff was instructed that anti-inflammatory medication, Sulindac, should and would be tried before considering a steroid injection and Merricks agreed with the plan.[70]  On November 22, 2002, plaintiff stated that "the pain he has now is the same he has always had related to his bilateral shoulder injuries" and that "he has had some improvement with Sulindac."[71]  Clinic notes further indicate that his type two diabetes mellitus was in "fair control."[72]

Plaintiff was examined on February 26, 2003 with an ingrown toenail.  Keflex was prescribed for the infection and a podiatry consult was ordered.  Progress notes indicated the following, to wit: "motor power +5 in all 4 limbs [and] no sensory deficits."[73]

## B. HEARING TESTIMONY

Merricks testified that he was fifty-six years old at the time of the hearing and that he drives every day from the lower ninth ward to the upper ward, *i.e.*, approximately seven to eight miles

---

[70]*See* VA Medical Center Progress Notes dated November 8, 2002 [Adm. Rec. 134].

[71]*See* VA Medical Center Progress Notes dated November 22, 2002 [Adm. Rec. 188].

[72]*Id.*

[73]*See* VA Medical Center Progress Notes dated February 26, 2003 [Adm. Rec. 185].

each way.[74] After having attended college for approximately three years, Plaintiff graduated from junior college.   After graduation, he went to work at Sears and Roebuck for twenty years as a service technician repairing and replacing refrigerators.   Thereafter he worked for another refrigerator company in an assembly line.   In the year of 2001, Merricks worked with the City of New Orleans' Recreation Department.

Plaintiff testified that he cannot walk because walking causes his legs to hurt and that he is legally blind in one eye from glaucoma.[75]   He testified that, after his first administrative hearing, he joined a gym to boost his self-esteem, but he had to stop walking because of the pain.[76]

Merricks testified that his main problems were diabetes, depression and shoulder pain. Plaintiff explained that his shoulders were injured while he worked for Sears because he had to lift and carry heavy weights.   In 1988 and 1989,  plaintiff had surgery on both shoulders and then went back to work at Sears until 1995 doing basically doing the same work.[77]

At his job with the New Orleans Recreation Department, there was no lifting involved.  His job was basically teaching children how to play sports, including the fundamentals of throwing and catching a ball.[78]   Merricks stated that he stopped being a coach in December of 2001 because his depression had taken its toll on him.[79]

---

[74]*See* Transcript of the August 6, 2003 Administrative Hearing [Adm. Rec. 62-64.

[75]Transcript of August 6, 2003 Administrative Hearing [Adm. Rec. 72-74].

[76]*Id.* at 75.

[77]*Id.* at 76-78.

[78]*Id.* at 80.

[79]*Id.* at 80-81.

Plaintiff testified that he takes no medication for his depression.  He attends one-on-one individual counseling session with a rehabilitation counselor once a month.  Merricks testified that the only medications he takes are for his heart, bladder, eyes, diabetes and to enhance sexual performance.   Plaintiff explained that, as a single man, it is difficult to follow a diabetic diet and that he eats out most of the time.  He further noted that his living conditions do not permit cooking since he lives in a mobile home without electricity or running water.[80]

Regarding his work history, Merricks testified that, when he worked for the Recreation Department, the job was five (5) days a week, but only for four (4) hours a day.  As to the ninety (90) day period that he worked for the Marriott, plaintiff testified that his work was full time mostly servicing ice makers located on all forty floors of the establishment.[81]   Referring to his work on the assembly line as a mechanic, that employment lasted for a period of  ninety (90) days and was full time employment.[82]  Summarizing the effects of his physical and mental ailments, Merricks stated:

> Well, I can't work because of, like I said, my shoulders.  I have constant pain in my shoulders.  The diabetes ha[s] robbed [me of] my sight.  Like I say, I don't know about the heart thing yet....
> Depression is the thing that's really hurting me more than anything.  It's going in and out of depression.  If my grandchildren are around, I can overlook the depression a little bit, but when I'm by myself, that's when I think of things.[83]

---

[80]*Id.* at 82-85.

[81]*Id.* at 87-89.

[82]*Id.* at 87-88.

[83]*Id.* at 88-89.

23

Vocational Expert (VE) Deborah Bailey classified the plaintiff's prior work as follows, to wit: (1) air conditioning and refrigeration service technician/ skilled, heavy exertional level;  (2) assembly line mechanic/skilled, light exertional level; (3) ice maker mechanic skilled, medium exertional level; and (4) recreation instructor/semi-skilled, light exertional level.  Regarding the plaintiff's residual functional capacity (RFC), the VE was asked to assume a hypothetical individual described as one of advanced age with two and a half years of college, air condition/refrigeration training, who has the exertional capacity for up to medium level work with pushing and pulling limited to no more than 25 pounds frequently and  no more than 50 pounds on occasion and with no frequent overhead work.[84]   Assuming such a hypothetical individual, VE Bailey testified that such an individual could perform the plaintiff's past positions as a recreational instructor and an assembly-line mechanic as those positions were actually performed by the plaintiff and as those jobs are customarily performed in the economy.[85]

ALJ Torres concluded that, based on the residual functional capacity set forth above, the VE credibly testified that Merricks remains capable of returning to his past relevant work as a recreation instructor and an assembly-line mechanic; therefore, plaintiff cannot be considered "disabled" at any relevant time through the date of the decision because he can return to his past relevant work.[86]

---

[84]*Id.*  at 90-91.

[85]*Id.* at 91.

[86]*See* ALJ Torres Decision dated October 27, 2003 [Adm. Rec. 21].

## VI.  ANALYSIS

### A. Subjective Complaints of Limitations Caused by Pain and Depression/PTSD

Turning to the issue of the alleged failure of the ALJ to heed claimant's complaints of

disabling pain, depression and PTSD, the ALJ candidly admitted that with the exception of

depression/PTSD, the claimant's impairments were "severe," and thus may cause some pain.  The

ALJ's efforts to define the limits of the claimant's impairments, whether exertional or

nonexertional, are substantiated by the administrative record. His determination was made only

after the thorough consultative examination by internist Dr. Mandich, a psychiatric evaluation by

Dr. Martha Wickett, two administrative hearings and review of the latest records from the

claimant's treating physicians.   As explained in more detail below, the ALJ complied with his duty

to develop the facts fully and fairly relating to an applicant's claim for disability benefits.[87]

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when

such pain is constant, unremitting and wholly unresponsive to therapeutic treatment. *Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether the claimant's pain is

disabling, the first consideration is whether the objective medical evidence shows the existence of

an impairment which could reasonably be expected to produce the pain alleged.  Medical factors

---

[87]*See Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000)(noting that the ALJ as a duty to fully an
fairly develop the facts). The *Carey* court further restated the rule of the Fifth Circuit regarding the
requirement that the claimant make a showing of prejudice, to wit:

> This Court will not reverse the decision of an ALJ for the failure to fully develop the
> record unless the claimant shows that he or she was prejudiced by the ALJ's failure.
> *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996; *Kane v. Heckler*, 731 F.2d
> 1216, 1220 (5th Cir. 1984).  To establish prejudice, a claimant must demonstrate that
> he or she "could and would have adduced  evidence that might have altered the
> result." *Kane,* 721  F.2d at 1220.

*Carey*, 230 F.3d at 142.

which indicate disabling pain include: limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm.

With regard to the claimant's complaints of disabling, unremitting pain in his shoulders, the medical record and the plaintiff's own reports regarding his daily activities disclose no sound basis whatsoever for crediting these complaints of disabling pain.   Indeed, Merricks' activities of daily living were not restricted to any appreciable degree and included walking, doing handyman work, hanging around on the corner with guys in the neighborhood and working as a recreational instructor for four hours a day with children through December of 2001.

Focusing in particular on plaintiff's complaints of depression and PTSD, as ALJ Torres observed, Dr. Wickett's mental status examination included findings consistent with normal thought processes and average intelligence.   The ALJ refused to credit Merricks' subjective statements regarding "lack of concentration" due to PTSD and depression, finding documentary support for such mental restriction/limitation entirely lacking.  ALJ Torres explained:

> Episodes of deterioration or decompensation are not demonstrated in the evidence. To the contrary, the fact that claimant sustained part-time work activity for at least a year after the alleged onset date and functions with no more than slight degrees of compromise in all other areas persuasively shows that he maintains good adaptive and overall functioning.  Certainly, the lack of any significant treatment for a mental impairment is consistent with a finding that there have not been consistent or repeated episodes of symptom exacerbation.

> The **documented** manifestation of a disorder in terms of symptomatology, the severity of such symptomatology  and any resulting functional limitations constitute the basis for analysis of whether an alleged impairment is "severe."  Such documentation is not present in this case.[88]

---

[88]ALJ Torres' Decision [Adm. Rec. 19].

The plaintiff did attend one counseling session monthly with a VA readjustment counselor; however, he was not prescribed any psychotropic or mood altering drugs. During the entire period in question, Merricks had not been hospitalized even once on account of any mental condition. His overall mental and physical condition was stable and the ALJ gave ample explanation for his determination that the plaintiff does not have a mental impairment that can be characterized as "severe" within the meaning of the Act.

A claimant's allegations of disabling pain and other symptomatology may be discredited by evidence that the claimant has received only minimal medical treatment and/or has taken only occasional medications. That is precisely the case on the face of the medical evidence of record. The medical records indicate that, during the pertinent time frame, the claimant occasionally took the anti-inflammatory drug Sulindac when his shoulder pain flared up. Plaintiff admitted that he took no medication for depression, anxiety or PTSD.

In short, the ALJ articulated sound reasons for discounting the plaintiff's subjective complaints of debilitating pain and limitations stemming from his history of depression and PTSD. The underlying medical impairments, for which no regular course of medication other than an occasional anti-inflammatory drug was prescribed, could not reasonably be expected to produce disabling pain or other symptomotology.

Addressing plaintiff's glaucoma and Type II Diabetes Mellitus, the medical records reflect that, during the time period in question, these conditions were controlled with prescription drug/drop therapy, *when Merricks was compliant with physician's instructions*.

On review, the district court's function is limited to a determination of whether the ALJ's findings are supported by substantial evidence. Clinical and medical evidence in the administrative

27

file discussed above and at length in the ALJ's report sufficiently support the Commissioner's determination that the plaintiff can perform his past relevant work as a recreational instructor and assembly-line technician.  Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms.[89] Clearly, that was accomplished in this case and the Commissioner has complied with the applicable regulations.

In summary, the medical records fail to support plaintiff's claim  of non-exertional impairments that significantly affect his ability to perform his past relevant work. The medical records sufficiently demonstrate that Merricks' complaints of "severe" depression/PTSD are not supported by the record.[90]  The records reflect that these conditions lack any clinical proportion, and thus, except for a monthly session with a readjustment counselor, his depression, anxiety and/or PTSD were not treated.

Social security regulations provide that the "adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  Social Security Ruling 96-8p.[91]  ALJ Torres did so in the case of Merricks.  The record sufficiently supports the ALJ's conclusion that plaintiff's pain and mental condition did not affect Merricks' ability to perform his past relevant work.

---

[89]20 C.F.R. § 404.1529(c)(3)(iv); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

[90]*See Shave*, 238 F.3d at 596 (holding that ALJ's finding of  no functional limitation due to a mental impairment supported by substantial evidence, and noting that it was apparent from claimant's own statements to his physicians that he had no mental difficulty severe enough to impair his basic ability to function).

[91]The ALJ is bound by the agency's rulings.  *See* 20 C.F.R. § 402.35(b)(1).

## B. CREDIBILITY

The ALJ's assessment of the claimant's credibility is accorded great deference.  The record lacks medical findings that corroborate nonexertional limitations which significantly affect the claimant's residual functional capacity to perform a full range of light work.  An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain as well as the duty to ultimately determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment.

It is apparent to the Court that the ALJ did consider the  claimed nonexertional limitations and determined in light of the medical evidence, and the plaintiff's activities, that the limitations were only slight and had a minimal effect on claimant's ability to work.[92]    In addition to his observation that the medical treatment record, considered together with the plaintiff's longitudinal work history, does not support the plaintiff's complaints of debilitating symptomotology, the ALJ further noted:

> I observed that the claimant remained seated for approximately one hour during the hearing with gestures, grimaces or other indicators of pain noted.  At the end of the hearing, he stood, opened the heavy door to the hearing room and exited with a normal gait and no apparent difficulty.  I also observed the claimant raise[] his right arm overhead while he demonstrated how he taught children to throw a basketball when he was a recreation instructor.  In doing so, he did not relate or exhibit any particular problems or symptoms of pain.

> Claimant may experience some degree of functional loss as a result of his medically determined combination of impairments; however, such loss, in-and-of itself, is not incompatible with the performance of certain levels of sustained work activity.  Neither the objective medical evidence nor claimant's testimony established that claimant's ability to function is so severely impaired as to preclude all work

---

[92]See ALJ Torres' Decision dated October 27, 2003 (reiterated above at pp. 3-5, 26 supra)[Adm. Rec. 18-19].

activity.[93]

Regarding the plaintiff's subjective complaints of intrusive and distressing recollections, *inter alia*, the ALJ specifically noted and the record bears out that the first report of such symptomotology occurred during a counseling session, which occurred nine days after the issuance of the Appeals Council's order of remand.  The ALJ concluded that the time of the complaints, the conspicuous absence of any such complaints in prior counseling sessions, together with the lack of significant psychiatric treatment history and absence of a specific psychiatric diagnosis indicated by a physician, psychiatrist or duly qualified psychologist, further casts doubt on the plaintiff's credibility.  The ALJ sufficiently explained his conclusions regarding plaintiff's lack of credibility.

## C. MENTAL IMPAIRMENT "NOT SEVERE" WITHIN THE MEANING OF THE ACT

The ALJ specifically noted that Dr. Mandich found that plaintiff was fully oriented in all spheres, appeared to be of average intelligence, displayed adequate cooperation/mood/behavior, had memory/insight in tact and, aside from his subdued demeanor, presented a normal personality. Additionally, VA Medical Center Progress Notes dated August 9, 2002 indicate both that plaintiff was not being treated for depression and that his depression screen was "negative."[94]  Additionally, Outpatient Progress Notes dated November 8, 2002 describe the plaintiff as "pleasant, cooperative, well-groomed and well."[95]

Moreover, upon examination by psychiatrist Dr. Martha Wickett at the request of the Social Security Administration, it was specifically noted that the plaintiff was not aware that he had PTSD

---

[93]ALJ Torres' Decision dated October 27, 2003 [Adm. Rec. 20].

[94]See VA Medical Center Progress Notes dated August 9, 2002 [Adm. Rec. 143].

[95]*Id.* [Adm. Rec. 134].

and that he had worked all of his life.  Dr. Wickett further noted that the plaintiff's daily routine

involves awakening at 6:00 A.M., walking, doing handyman work on his cousin's and sister's

property, "hang[ing] around on the corner with the guys," working with the kids at the recreation

department, cleaning, doing the laundry and a little cooking (*i.e.*, "he eats out most of the time").[96]

Dr. Wickett also found that Merricks was neatly groomed, well-spoken, had good eye contact and

was oriented in all spheres.  It was further noted that Merricks drove himself to the session, he

exhibited no abnormal movement, his thought process showed no looseness of association or flight

of ideas and his affect was appropriate to his slightly anxious mood.[97]  Dr. Wickett further noted

that the had a *history* of PTSD and was competent to manage his own affairs, notwithstanding the

added stress of his present medical problems.[98]

The ALJ further adequately explained what initially appeared to be a discrepancy between

the more restrictive findings noted by the state's medical consultant Dr. McFarlain and the

conclusions of Drs. Guidry and Higgins, to wit:

> The decision from which claimant initially appealed was based on
> conclusions by state medical consultants Drs. Guidry and Higgins
> that claimant could perform medium work and did not have a
> "severe" mental impairment. (Exh. 4F/5F).  I concur to a greater
> extent with the conclusions rendered by Drs. Guidry and Higgins
> than with the more restrictive findings noted by state medical
> consultant Dr. McFarlain in December 2002.  (Exh. 9F). Dr.
> McFarlain's assessment indicates moderate degrees of limitation in
> two functional areas, which is inconsistent with the absence of

---

[96]*See*  Dr. Martha Wickett's Psychiatric Evaluation dated July 25, 2001 [Adm. Rec. 300-301].

[97]*See* Dr. Martha Wickett's Psychiatric Evaluation dated July 25, 2001 [Adm. Rec. 300-301-302].

[98]*Id.* [Adm. Rec. 302]

31

formal psychiatric or psychological treatment, the minor amount and type of counseling claimant has received as well as the daily activities shown in the record.[99]

## D. EXTRA-RECORD EVIDENCE

Plaintiff refers to records not submitted to the ALJ or the Appeals Council (*i.e.*, extra-record evidence) to rebut the medical evidence adduced and made part of the administrative record. Liberally construing plaintiff's brief, it appears that Merricks contends that "new and material" evidence supports plaintiff's contention that he is totally disabled within the meaning of the Act and therefore, the decision of the Commissioner should be reversed and the case remanded for further consideration in light of the additional medical evidence.

The additional evidence highlighted by plaintiff consists of the following, to wit: (1) post-decision 2004 medical treatment records;  (2)  Correspondence from Sears dated 1984 setting out worker's compensation payments owed to plaintiff in the 1980's; and (3) VA records issued during the pertinent time period (*i.e.*, 2001) indicating that the plaintiff underwent a mental status examination and that the VA gave him a 20% disability rating for his diabetes.

Judicial review of administrative decisions denying Social Security Benefits is confined to the pleadings and the transcript of record.[100]  A court may order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.[101]

---

[99]*See* ALJ Torres' Decision [Adm. Rec. 20-21].

[100]*See* 42 U.S.C. § 405 (g); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).

[101]*See* 42 U.S.C. § 405 (g).

Plaintiff has failed to show why the evidence pre-dating the determination on remand was not presented to either the ALJ or the Appeals Council in a timely fashion.  Merricks clearly fails to meet the governing "good cause" standard with respect to consideration of additional evidence.  Courts should only consider additional evidence if "good cause" is shown for failure to present the additional evidence at the administrative level.  Plaintiff has failed to meet this standard  with respect to the *pre*-Decision extra-record evidence.

The Commissioner aptly points out that new evidence pertaining to the relevant time period – VA records indicating that Merricks underwent a mental status examination in 2001 and was given a 20% disability rating for his diabetes in 2001 – does not satisfy the materiality requirement. Plaintiff has not demonstrated a reasonable possibility that the aforesaid evidence would affect the outcome of his case.

The Court may remand a matter to the Commissioner to consider new evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."[102]   To justify a remand, the evidence must satisfy three criteria.  The evidence must be both new and not merely cumulative of the evidence already in the record.[103]   The evidence must also be material.[104]   In other words, the evidence must be "relevant, probative, and likely to have changed the outcome of the Secretary's determination."[105] Finally, the claimant must show good cause for failing to incorporate the

---

[102]42 U.S.C. § 405(g).

[103]*Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989).

[104]*See id.*

[105]*Id.*

33

evidence into the administrative record.[106]

The VA records dated 2001 are not new and material evidence and Merricks has failed to

demonstrate that there is a "reasonable possibility" that such evidence, if presented, would have

changed the ALJ's decision. Additionally, the evidence came into existence before the ALJ's

decision issued and the Appeal Council's ruling became final. Because the evidence existed before

the Appeals Council handed down its decision, the evidence is not new.[107]   Merricks has

demonstrated no reason why he could not have submitted these VA records to either the ALJ or the

Council.

The Commissioner has more than adequately addressed the concerns about the lack of

materiality.  The August 22, 2001 mental status examination submitted on appeal provides as

follows:

> DIAGNOSES: Axis I: Adjustment disorder with depressed mood, mild situation.
> Axis II: No diagnosis.  Axis III: Glaucoma, diabetes, decreased auditory acuity.
> Axis IV: Mild stress with his low income.  Axis V: Global assessment of
> functioning - 70.[108]

The diagnosis is simply *mild* adjustment disorder, which is situational in nature; there is no Axis I

diagnosis of PTSD or Depressive Syndrome.  This "new evidence" is merely cumulative.   It is

further noted that the readjustment counselor's notes dated September 15, 2003 and October 21,

2003 indicate that the plaintiff "appeared to be doing well."  The counselor's follow up notes dated

---

[106]*See id.*

[107]*See, e.g., Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994) (noting that evidence is new
when issued after Secretary's determination).

[108]Report of Dr. David Mielke dated August 22, 2001 [*In Globo* Attachments to Plaintiff's
Memorandum in Support of Motion for Summary Judgment].

November 24, 2003 solely refer to physical problems that Merricks was having at that time due to his diabetes.[109]   Moreover,  the rehabilitation counselor's Progress Notes dated February 26, 2004 document that Merricks was in for a routine visit, he was "alert," "coherent", logical" and  "doing okay."[110]

Further addressing the VA impairment rating, a 20% disability does not preclude all gainful employment within the meaning of the Social Security Act and is further not binding upon the ALJ in any event.[111]   Merricks has not demonstrated a reasonable possibility that the result of the mental status examination or the 20% disability rating would have changed the ALJ's decision in light of the evidence before him when he denied Merricks' request for benefits.  Most notably, even a VA rating of total and permanent (*i.e.*, 100%) disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different.[112]   In *Chambliss*, the Fifth Circuit observed that it has sometimes referred to a VA *total* disability determination as being entitled to "great weight."[113]   However, the Court reaffirmed that "[w]hile this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case."[114]

---

[109]*See* VA Medical Records submitted as an *in globo* attachment to Plaintiff's Motion for Summary Judgment.

[110]*Id.*

[111]20 C.F.R.  § 404.1504.

[112]*See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001) (evidence of 100% disability not binding or entitled to controlling weight but must be considered); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir.1994).

[113] *See Chambliss*, 269 F.3d at 522.

[114]*Id.*

In the case at the bar, Merricks testified at the administrative hearing regarding his VA disability rating, stating that after his shoulder operations he was never "a hundred percent;" he "got [a] ten percent disability" rating in each shoulder and then he "went back to work."[115] The ALJ does in fact discuss Merrick's history of shoulder surgery and "[a]fter careful consideration of the entire record" found that, "in light of claimant's history of shoulder surgery, he cannot frequently engage in overhead work."[116]  In light of the similarities between the medical records/testimonial evidence considered by the ALJ and the aforesaid extra-record evidence, there is no reasonable possibility that the aforesaid extra-record evidence would have changed his decision.  Since the aforesaid evidence is not "new" as contemplated by § 405(g) and is not material, the Court should not consider it.

The balance of the extra-record evidence relates to medical treatment in 2004, which also fails to meet § 405(g)'s "materiality" requirement.  To be material, extra-record evidence must relate to the time period for which benefits were denied.[117]  In this case,  plaintiff applied for disability insurance benefits on April 17, 2001 and his application was denied on October 27, 2003.  Therefore, any extra-record evidence that this Court should consider must relate to that time period.  Additional evidence consisting of VA records dated 2004 does not relate to the alleged period of disability at issue (November 15, 2000 to October 27, 2003)[118] and cannot be considered

---

[115]*See* Transcript of the August 6, 2003 Administrative Hearing [Adm. Rec. 77-78].

[116]ALJ Torres Decision dated October 27, 2003 [Adm.Rec. 20] .

[117]*See Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

[118]Plaintiff protectively filed his application for disability benefits on April 17, 2001, alleging inability to work beginning November 15, 2000.  The ALJ's decision only addresses the period of

"material" for the purposes of 42 U.S.C. § 405 (g).

Evidence is material if it has probative value and is relevant.[119]  To be relevant, the new evidence must relate to the time period for which benefits were denied and cannot concern evidence of later acquired disability or *subsequent deterioration of a previously non-disabling condition.*[120]  Plaintiff is free to submit this evidence to the Social Security Administration in connection with a new application for benefits, but it is not properly considered  impeachment *vis a vis* the ALJ's October 27, 2003 decision under review.[121]

## E. NONCOMPLIANCE

There is a plethora of evidence discussed above and in the ALJ's decision that most of Merricks' problems occurred when he was noncompliant with his physician's instructions regarding medication and diet restrictions.  The plaintiff's choice of non-compliance and refusal to comply with physician's orders is documented in his treatment records.  It is also clear based upon a longitudinal view of the plaintiff's treatment records that his non-compliance is not caused by any diagnosed mental disease or psychotic symptoms.  Moreover, considering the ALJ's exhaustive discussion of the plaintiff's non-compliance, replete with citations to the plaintiff's medical records and treatment notes, this issue requires no further examination or development of the record.

---

time up to and including the date of decision (*i.e.*, October 27, 2003).

[119]*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981).

[120]*Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir.1987); *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985).

[121]*See Johnson*, 767 F.2d at 183.

In order to be entitled to benefits, a social security claimant must follow treatment prescribed by his physician if the treatment can restore his ability to work.[122]   If the claimant does not follow prescribed treatment without a good reason, he will not be found disabled.[123]   When determining whether the claimant has an acceptable reason for failure to follow prescribed treatment, the ALJ must consider the claimant's limitations, including mental limitations.[124] Clearly, ALJ Torres did so in this case.

The undersigned is well-aware of the reported decisions in which courts have found that non-compliance that is the result of a mental impairment may be a justifiable excuse.[125]   Each case depends on its individual facts and there is no *per se* rule.[126]  This case is easily distinguished from the line of cases cited below at note 125.  The ALJ determined that Merricks' mental condition (*i.e.*, history of depression/PTSD) was not "severe" and that the limitations complained of in this regard were less than credible in light of the paucity/absence of psychiatric treatment and prescription drug therapy.   The ALJ determined that:

The **documented** manifestation of a disorder in terms of symptomatology, the

---

[122]20 C.F.R. § 404.1530(a).

[123]20 C.F.R. § 404.1530(b).

[124]20 C.F.R. § 404.1530(c).

[125]*See Mendez v. Chater*, 943 F. Supp. 503, 508 (E.D.Pa.1996); *Sharp v. Bowen*, 705 F. Supp. 1111, 1123-24 (W.D.Pa.1989) (diabetic who injected insulin into his pillow and ate junk food rather than prescribed diet did so because of severe personality disorder, providing justifiable cause for non-compliance).   *See also Lovelace v. Bowen*, 813 F.2d 55, 59-60 (5th Cir.1987) (case remanded because ALJ did not make fact findings as to whether it was possible or impossible for obese claimant to remedy weight as recommended by physicians); *Scott v. Heckler*, 770 F.2d 482, 486-87 (5th Cir.1985) (same).

[126]*Lovelace, supra*; *Benedict v. Heckler*, 593 F. Supp. 755, 758-61 (E.D.N.Y.1984).

severity of such symptomatology and any resulting functional limitations constitute the basis for analysis whether an alleged impairment is "severe." Such documentation *is not present in this case.* It has not been satisfactorily established that claimant's depressive *symptoms* or PTSD *symptoms* necessitate regular treatment. His overall condition is stable and there is no appropriate evidence of more than minimal functional limitation resulting from a mental impairment. For the multiple reasons discussed above, I conclude that claimant does not have a mental impairment that can be considered as "severe" within the meaning of *Stone v. Heckler,* 752 F.2d 1099 (5ᵗʰ Cir. 1985) and SSR 96-3p.[127]

Suffice it to say, this case does not involve an individual who is truly paranoid, hallucinating or laboring under the misconception that his doctors "are out to get him." More to the point, the medical records clearly demonstrate that the plaintiff has not adhered to the treatment plan prescribed by his physicians at the VA Medical Center, including diabetic diet, prescription drug therapy and eye drops for Glaucoma, based upon his own refusal and/or unreasonable neglect and *not because of any mental limitations.*

## F. DUTY TO DEVELOP THE RECORD

Both the Social Security Act and the Commissioner's implementing regulations require that administrative law judges fully and fairly develop facts relative to a claim for benefits.[128] When the claimant is unrepresented by counsel, this basic obligation is heightened.[129] An administrative law judge's failure to carry out this duty precipitates a decision not informed by sufficient facts and may be considered unsupported by substantial evidence.[130] Nonetheless, even under the heightened

---

[127] ALJ Torres Decision dated October 27, 2003 (italicized emphasis added) [Adm. Rec. 19].

[128] *Ripley v. Chater*, 67 F.3d 552, 557 (5ᵗʰ Cir. 1995); *Bowling v. Shalala,* 36 F.3d 431, 437 (5ᵗʰ Cir. 1994); *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5ᵗʰ Cir. 1984); 42 U.S.C. § 405(g); 20 C.F.R. § 410.640.

[129] *Bowling,* 36 F.3d at 437; *Kane,* 731 F.2d at 1220.

[130] *See Pierre v. Sullivan,* 884 F.2d 799, 802 (5ᵗʰ Cir. 1989)(*per curiam*).

duty of inquiry applicable to *pro se* claimants only, a claimant must demonstrate, or at least meaningfully suggest, prejudice in order to obtain an reversal.[131]  "Prejudice can be established by showing that additional evidence might have led to a different decision."[132]

The duty to further develop an administrative record is not infinite; rather, it is limited by several pragmatic factors. For instance, while the regulations authorize the ALJ to seek a consultative examination to develop a full and fair record, the decision is discretionary.[133]   An ALJ need not order such an evaluation unless it is necessary to enable the ALJ to make a disability determination.[134]  No duty to further investigate arises unless the existing record raises a reasonable suspicion of a potentially disabling impairment that has not been fully evaluated.[135]

Plaintiff in the present case was represented by counsel and ALJ Torres requested that counsel update the plaintiff's medical records prior to the final determination of the plaintiff's claim.[136]   Under Social Security Ruling 96-2p, the option of seeking additional records is available to the ALJ.  However, the ruling further provides that "development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed."[137]

---

[131]*Bowling,*  36 F.3d at 437.

[132]*Ripley,* 67 F.3d at 557 n. 22.

[133]*See* 20 C.F.R. § 404.1517.

[134]*See Turner v. Califano,* 563 F.2d 669, 671 (5th Cir. 1977); 20 C.F.R. § 404.1527.

[135]*See Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987).

[136]*See* Transcript of August 6, 2003 Hearing [Adm. Rec. 62].

[137]SSR 96-2p.

Here, the record appears more than adequately developed, being complete with treating physicians opinions, treatment notes, and opinions of consulting medical specialists, who examined the plaintiff.   There is no discernible error arising from any failure on the part of the ALJ to personally request additional information from the plaintiff's treating physicians.

The case law teaches that reversals based upon a failure to develop the record require a showing of prejudice.[138]   At the outset, the Court observes that this case is nothing like the inadequate inquiry line of cases, typified by *Kane v. Heckler,* 731 F.2d 1216 (5th Cir. 1984), wherein the ALJ conducted a five-minute hearing transcribed in four pages and asked a single question of the *pro se* claimant.  In the case at bar, ALJ Torres thoroughly questioned Merricks, *who was represented by counsel*.  In fact, two administrative hearings were conducted and both addressed Merricks' physical/mental conditions, symptoms, surgeries, educational background, work experience, responsibilities, daily activities and  how plaintiff's symptoms affected his ability to function in daily life and in the workplace.[139]

The ALJ's questioning on the points of the plaintiff's mental impairment, pain, anxiety, shoulder surgeries, physical limitations, lack of medical treatment, medications, education and daily activities, together with the Administrative Record as it is presently constituted, are sufficient

---

[138]*Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984).

[139]*See* Transcript of the June 19, 2002 Administrative Hearing before ALJ Torres  [Adm. Rec. 27-59]; Transcript of the August 6, 2003 Administrative Hearing before ALJ Torres  [Adm. Rec. 60-94].

to satisfy the duty imposed by *Kane, supra,*[140] and by the Appeals Council on remand.[141]   ALJ

Torres fulfilled his duty to develop the relevant facts, to augment the plaintiff's medical records

and to resolve the apparent conflicting medical opinions, so that he could fully and fairly evaluate

Merricks' claim for disability insurance benefits.[142]

### G. ADMINISTRATIVE APPEALS JUDGE'S ACTIONS ON REVIEW

Plaintiff contends that there is some procedural irregularity inherent in the fact that only

Appeals Officer Carl E. Alexis's name appears on the February 27, 2004 Notice of Appeals

Council Action.[143]   Plaintiff argues by reference to Webster's Dictionary that the definition of the

term  "council is two or more" and also that Carl E. Alexis is not an Administrative Appeals

Judge.[144]  The Commissioner counters that the Administrative Appeals Judges (AAJ's), who issued

the Appeals Council actions in this case are, in fact, members of the Appeals Council and that

regulatory provisions applicable to Appeals Council proceedings do not list titles of Appeals

Council members other than chairman and deputy chairman.  In any event, the Appeals Council

properly designated its members, known as AAJ's, to issue the Council's action taken in this case

---

[140]*See Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996); *Carrier v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *James v. Bowen,* 793 F.2d 702, 704-05 (5th Cir. 1986) (distinguishing *Kane v. Heckler*, 732 F.2d 1216 (5th Cir. 1984)).

[141]*See* Order of Appeals Council dated January 2, 2003 [Adm. Rec. 549-551].

[142]*See* Transcript of the Administrative Proceedings conducted on August 6, 2003 (inquiring of plaintiff's counsel as to the existence of any additional medical records, admitting additional medical evidence submitted pursuant to the hearing and tasking counsel to submit additional diagnostic studies, including plaintiff's angiogram results) [Adm. Rec. 62-63, 93].

[143]*See* Notice of Appeals Council Action dated February 27, 2004 [Adm. Rec. 5-8].

[144]*See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 8.

and the plaintiff has failed to identify any prejudice, lack of substantial evidence, failure to comply with applicable rules or other reversible error.

## VII. CONCLUSION

Substantial evidence supports the ALJ's decision that (1) plaintiff is not disabled within the meaning of the Act and (2) based upon his residual functional capacity to perform medium work that does not involve pushing/pulling greater than 25 pounds frequently or 50 pounds occasionally or frequent overhead work, he "is able to return to his past relevant work as a recreation instructor and assembly-line mechanic."[145]  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision" and, in applying this standard, the court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner."[146]  Therefore,

**IT IS RECOMMENDED** that the Commissioner's decision be AFFIRMED and that the plaintiff's complaint be DISMISSED WITH PREJUDICE.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the

---

[145]ALJ Torres' October 27, 2003 Decision [Adm. Rec. 22].

[146]*See Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000).

district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this ____7____ day of July, 2005.

                         DANIEL E. KNOWLES, III
                         UNITED STATES MAGISTRATE JUDGE

44